IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOSEPH EARL CLARK, II,              )
                                     )
            Petitioner,              )
                                     )
       v.                            )   1:16CV672
                                     )
ERIK A. HOOKS,[1]                    )
                                     )
            Respondent.              )


ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

In this case, Petitioner Joseph Earl Clark, II, a prisoner of the State of North Carolina, has filed a Petition for Writ of Habeas Corpus [Doc. #2], challenging a prison disciplinary proceeding that resulted in a loss of sentencing credits. Respondent has filed a Motion for Summary Judgment [Doc. #6], contending that the Petition is meritless and is barred by the statute of limitations. Petitioner filed later Motions [Doc. #9, #12] requesting an evidentiary hearing or discovery. No discovery has been conducted. For the reasons set out below, the Court concludes that there are genuine issues of material fact precluding entry of summary judgment at this time.

---

[1] Erik A. Hooks was appointed as the Secretary of the North Carolina Department of Public Safety on January 5, 2017.

I.   BACKGROUND AND PROCEDURAL HISTORY

On December 9, 2014, Petitioner was found guilty of committing B06, Sexual Act by a Prisoner (a prison disciplinary offense), which resulted in the loss of thirty days of sentence reduction credits. (Pet. [Doc. #2] at 1.) On December 29, 2014, the prison's chief disciplinary hearing officer denied his appeal. (Ex. [Doc. #7-2] at 2.) Two weeks later, Petitioner filed a Petition dated January 14, 2015, in the Eastern District of North Carolina, alleging a violation of his due process rights in the manner that his disciplinary hearing was conducted. (Pet. [Doc. #1], Clark v. Perry, 5:15-HC-2012-F (E.D.N.C.) (the "First Habeas Petition"). The First Habeas Petition was transferred to this district, where venue is proper, and after screening and subsequent briefing, was ultimately dismissed without prejudice for Petitioner's failure to exhaust his state court remedies. (Order and Judgment, Clark v. Perry, 1:15-CV-388 (M.D.N.C. Feb. 1, 2016).)

On March 2, 2016, one month after his First Habeas Petition was dismissed, Petitioner filed a Motion for Appropriate Relief ("MAR") in Scotland County Superior Court (MAR [Doc. #7-3].) Petitioner's MAR was denied two days later after the state court found that the matter "regard[ed] a disciplinary proceeding of an inmate and [was] not subject to Motion for Appropriate Relief provisions." (Order [Doc. #7-4].) On March 28, 2016, Petitioner filed a state habeas corpus petition in Scotland County Superior Court (State Pet. [Doc. #7-5]), which was denied on April 8, 2016 (Order [Doc. #7-6]). Petitioner sought certiorari from the North Carolina Court of Appeals on April 18, 2016 (NCCOA Pet. [Doc. #7-7]), which was denied

on May 4, 2016 (Order [Doc. #7-9]).[2] Petitioner filed a Petition for Discretionary Review with the Supreme Court of North Carolina on May 16, 2016, which was denied on May 27, 2016. Clark v. Dep't. Pub. Safety, 789 S.E.2d 436 (Mem.). Petitioner thereafter filed the instant Petition two weeks later, in early June 2016.

II.  PETITIONER'S CLAIMS

Petitioner challenges his conviction for his prison disciplinary offense, alleging the following due process violations: (1) the investigating officer interfered with his attempt to gather witnesses by gathering the wrong person as a witness; (2) Petitioner was not allowed to read or see a copy of the accusing officer's written statement that was used to convict him; (3) Petitioner was denied his request to have his witness present at the hearing; (4) the hearing officer did not consider or weigh all of the conflicting evidence, including evidence in Petitioner's favor; and (5) Petitioner was denied access to the camera recording reviewed at the hearing. In response, Respondent has filed a Motion for Summary Judgment contending that Petitioner's claims are without merit and are time-barred by the one-year statute of limitations incorporated in 28 U.S.C. § 2244(d).

The record of Petitioner's disciplinary hearing provides the following summary:

ON 11/14/14 AT APPROX 0048 AM, OFC LINNEA CARTER FROM TAN 2 WAS DRESSING OUT 1230 AM KITCHEN WORKERS. WHILE WAITIN[G] FOR THE LAST INMATE TO DRESS OUT AND ACROSS THE WALKWAY, SHE OBSERVED INMATE JOSEPH CLARK #0628807, D-38, STANDING AT F2[A] KITCHEN DOOR WINDOW

---

[2] In the State's Response to the Petition for Writ of Certiorari, the State did not address the substance of Petitioner's claims, and instead took the position that prison disciplinary procedures are a matter of internal prison administration and are not amenable to direct judicial oversight.

WITH BLUE WORK GLOVES OFF BOTH HANDS WITH HIS RIGHT HAND ON HIS EXPOSED ERECT PENIS THROUGH THE ZIPPER PART OF WORK PANTS MOVING IN A BACK AND FORTH MOTION WHILE WATCHING HER IN THE HALLWAY. ONCE INMATE NOTICED SHE CAUGHT HIM HE TRIED TO TURN TO THE SIDE AND ZIP PANTS AND PUT BLUE GLOVES BACK ON.

FOLLOWING THE READING OF THE SUMMARY OF EVIDENCE, THE INMAT[E] WAS EXPLAINED HIS DISCIPLINARY AND APPEAL RIGHTS. HE WAS AFFORDED HIS RIGHTS DURING THE HEARING AND THE PACKAGE WAS READ IN ITS ENTIRETY. THE INMATE PLED NOT GUILTY TO THE B06 T2F-42, OFFICER BRELAND, FSM MCLEAN [SIC]. HE REQUESTED INMATE ON T2F-42 AND OFFICER BRELAND AS LIVE WITNESSES. DUE TO TH[E] STATEMENTS BEING OBTAINED AND THE WITNESSES STATING THAT THEY HAD NO KNOWLEDGE OF THE INCIDENT, THE DHO IS DENYING THE REQUEST FOR LIVE WITNESSES DUE TO RELEVANCE AND DUPLICATION OF STATEMENTS. INMATE REQUESTED THE CAMERA. HE DID NOT REQUEST STAFF ASSISTANCE.

INMATE CEDDRICK MILES #0936173, T2F42 STATED, "NO KNOWLEDGE OF THE INCIDENT, JUST MOVED IN THE BLOCK."

MR. ZERRANT MCLEAN, CFSMI STATED, "IN REFERENCE TO THE [ ] INFORMATION REQUESTED OF ME, CFSMI Z. MCLEAN, BY OFFENDER CLARK #0628807, HIS WORK ETHIC IS GOOD, HOWEVER, I HAVE NO KNOWLEDGE CONCERNING THE INCIDENT ON 11/14/14."

OFC RICHARD BRELAND STATED, "ON 11/14/14 AT APPROX 0048 OFFICER CARTER CAME INTO THE KITCHEN AND INFORMED ME THAT OFFENDER JOSEPH CLARK #0628807, WAS EXPOSING HIMSELF AT THE WINDOW OF F1B. I CALLED THE OFFENDER TO F2B, TOOK HIM TO TH[E] DRESS-OUT ROOM, DRESSED HIM OUT, TOLD HIM WHY AND ESCORTED HIM TO TAN UNIT.

> OFC DEVATER POLK STATED, "ON 12/04/14 AT APPROX 1245 PM, THE VIDEO REQUESTED BY INMATE JOSEPH CLARK #0628807 WAS REVIEWED. THE VIDEO OFFERS NO EVIDENCE FOR NOR AGAINST I/M CLARK AND WILL NOT BE MADE AVAILABLE FOR REVIEW DUE TO SECURITY AND OPERATIONAL PROCEDURES."
>
> DURING THE HEARING THE INMATE STATED THAT THE OFFICER WAS STANDING OUT AT THE DRESS OUT ROOM AND HE WAS STANDING WITH ANOTHER INMATE FIXING HIS CLOTHES. INMATE ADMITTED THAT HE WAS LOOKING OUT WINDOW. INMATE STATED THAT HE HAD A PROBLEM WITH NOT BEING ALLOWED TO SEE THE STATEMENT.
>
> INMATE STATED THE SAME SUMMARY AS IN HIS WRITTEN STATEMENT. AFTER REVIEWING THIS PACKAGE, NO EVIDENCE CAN BE FOUND TO SUPPORT THE INMATES ALLEGATIONS.
>
> BASED ON THE REPORTING PARTY'S STATEMENT AND THE INVESTIGATING OFFICERS REPORT, INMATE IS FOUND GUILTY OF THE B06 OFFENSE. PENALTY IS IMPOSED TO DETER THIS TYPE OF BEHAVIOR IN THE FUTURE.
>
> INMATE RESTRAINED AND UNABLE TO SIGN. HE WAS PROVIDED A COP[Y] OF THE RECORD OF HEARING, PUNISHMENT AND APPEAL FORM. THIS WAS WITNESSED BY SGT. J. LOWERY.

(Ex. [Doc. #7-2] at 7-8.)

Petitioner alleges, *inter alia*, that he requested a specific witness to be present at his disciplinary hearing, but that authorities did not comply with his request to gather that witness. In this regard, and as discussed more fully below, it appears that prison authorities may have interviewed the wrong individual regarding the disciplinary claim. (Pet'r Br. [Doc. #11] at 8-9); Ex. [Doc. # 7-2] at 19.) Petitioner has filed with the Court sworn statements from Tykeem

S. Thomas, the individual that Petitioner claims was present at the scene and can verify that Petitioner did not commit the disciplinary offense as alleged. (Pet'r Br. [Doc. #11] at 22-24.)

III.  DISCUSSION OF RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

  A.  Statute of Limitations

Respondent first moves for summary judgment on the ground that the instant Petition was filed outside of the one-year limitations period set out in 28 U.S.C. § 2244(d)(1). The one-year limitation period begins to run from the latest of several potential starting dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); see also Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008). In addition, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation." 28 U.S.C. § 2244(d)(2). This tolling provision under Section 2244(d) merely pauses the statute of limitations period in federal court; it does not

reset the date from which the one-year limitations period begins to run. See Minter v. Beck, 230 F.3d 663, 665-66 (4th Cir. 2000).

In response, Petitioner contends that his First Habeas Petition should toll the applicable statute of limitations. (Pet'r Br. [Doc. #11] at 4.) However, Respondent notes that the filing of a federal habeas petition would not toll the limitations period under § 2254. Duncan v. Walker, 533 U.S. 167, 180 (2001). Respondent thus contends that the Petition is untimely because Petitioner's conviction became final upon the conclusion of his disciplinary appeal on December 29, 2014, thereby starting the limitations period which ran, undisturbed, until its expiration on December 29, 2015, even though Petitioner's First Habeas Petition, originally filed in the Eastern District of North Carolina and then transferred to this District, was still pending at that time.

Petitioner contends in the alternative that equitable tolling should apply. Equitable tolling allows federal habeas review of an otherwise time-barred petition when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented filing." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). In Duncan v. Walker, the Supreme Court left open the question of whether Section 2244's one-year statute of limitations is subject to equitable tolling where the initial federal petition is timely filed but then later dismissed on exhaustion grounds after the statute of limitations period has passed. See Duncan, 533 U.S. at 180-81. In Holland v. Florida, the Supreme Court subsequently confirmed the general principle that § 2244(d) is subject to equitable tolling, and such determinations are to be made "on a case-by-case basis"

as needed to "relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules, which, if strictly applied, threaten the evils of archaic rigidity." Holland v. Florida, 560 U.S. 631, 649-50 (2010) (internal quotations omitted).

In considering this issue in the present case, the Court notes that many federal district courts find good cause to stay an initial habeas petition or hold the case in abeyance if a subsequent federal habeas petition, filed after the exhaustion of state remedies, would face a potential time bar. See, e.g., Smith v. Wolfe, No. PJM–10–2007, 2011 WL 4548315, at *6 (D. Md. Sept. 27, 2011); Buxton v. Ballard, No. 3:16-cv-04489, 2017 WL 1538163, at *8-10 (S.D.W. Va. Apr. 4, 2017), rec. adopted, 2017 WL 1536448 (Apr. 26, 2017).

> Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

Rhines v. Weber, 544 U.S. 269, 277 (2005). As noted above, in the instant case, Petitioner dated his first habeas petition on January 14, 2015, and it was filed in the Eastern District of North Carolina less than one month after the disciplinary hearing. The case was then transferred to this Court three months later. After screening, Respondent was ordered to respond. Respondent subsequently filed a Motion for Summary Judgment. After briefing on the Motion for Summary Judgment, the Court ultimately granted the Motion for Summary Judgment on February 1, 2016, "without prejudice to Mr. Clark filing another petition after he exhausts his state court remedies." (Order in 1:15CV388.) In the Order, the Court issued a

8

certificate of appealability "[b]ecause there is no case on point as to whether an inmate in the custody of the State of North Carolina must sue in state court to exhaust his remedies before filing a federal § 2254 action over a lack of due process in the rescission of good time credits." In these circumstances, the Court could have exercised its discretion to stay the First Habeas Petition and hold it in abeyance rather than dismissing it, but the certificate of appealability required entry of the Judgment. Petitioner elected to attempt to exhaust his state court remedies, rather than filing an appeal. However, the record reflects that in the state proceedings, Respondent took the position that the state disciplinary proceedings were not subject to judicial review in state court, even though Respondent had argued to this Court that state exhaustion was required. (Resp. Br. Ex. 7 [Doc. #7-8].) Furthermore, as the timeline set out above illustrates, Petitioner acted diligently in filing the First Habeas Petition, in seeking relief in state court after the First Habeas Petition was dismissed, and in subsequently filing the present Petition. Therefore, under these narrow and specific circumstances, equitable tolling should apply to allow consideration of the merits of the instant Petition.

      B.      Due Process Claims

Respondent further contends that summary judgment is appropriate because Petitioner's claims are without merit. As noted above, Petitioner alleges the following due process violations in the way that his disciplinary hearing was conducted: (1) the investigating officer interfered with his attempt to gather witnesses by gathering the wrong person as a witness; (2) Petitioner was not allowed to read or see a copy of the accusing officer's written statement that was used to convict him; (3) Petitioner was denied his request to have his

9

witness present at the hearing; (4) the hearing officer did not consider or weigh all of the conflicting evidence, including evidence in Petitioner's favor; and (5) Petitioner was denied access to the camera recording reviewed at the hearing.

Habeas courts have only limited authority to review prison disciplinary proceedings under § 2254, as inmates are not entitled to "the fully panoply of rights" afforded in ordinary criminal proceedings. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nonetheless, certain procedural safeguards apply when the loss of good time credits are at issue, as inmates have a protected liberty interest in statutorily provided good time credits. See id. at 557. The Supreme Court has set out the minimum requirements for due process in prison disciplinary hearings where such an interest is implicated:

> 1. Giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;
>
> 2. Providing the prisoner a written statement by the fact finder(s) as to the evidence relied on and reasons for the disciplinary action;
>
> 3. Allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;
>
> 4. Permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and,
>
> 5. Providing impartial fact finders.

See id. at 563-76. In addition to the above, "some evidence in the record" must support the factfinder's decision. Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454

(1985). Finally, relief may still be denied if the petitioner is unable to show that an alleged constitutional violation had "substantial and injurious effect or influence" on the factfinder's determination of guilt. See Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993); see also Brown v. Braxton, 373 F.3d 501, 508 (4th Cir. 2004) (applying harmless error review to due process error in prison disciplinary proceeding); Grossman v. Bruce, 447 F.3d 801, 805 (10th Cir. 2006).

In this case, Petitioner's first and third claims for relief are closely related, and both relate to his attempts to present a witness at the disciplinary hearing. Specifically, Petitioner contends that the investigating officer interfered with his attempt to gather witnesses by gathering the wrong person as a witness. Petitioner contends that as a result, he was denied his request to have his witness present at the hearing, without any determination that calling his requested witness would be hazardous to institutional safety or correctional goals. With respect to an inmate's right to call witnesses for disciplinary proceedings, prison authorities should make "reasonable efforts to identify [the] petitioner's witnesses." See Shuck v. Bledsoe, No. 7:05-CV-00167, 2005 WL 1862666, at *1 (W.D. Va. Aug. 3, 2005), rec. adopted, 2005 WL 2675090 (Oct. 20, 2005); see also Wilson v. Davis, 102 F. App'x 37, 39 (7th Cir. 2004) (remanding to the district court to determine whether it was possible for prison authorities to identify the individuals the prisoner wished to call as witnesses in his disciplinary proceeding); Kingsley v. Bureau of Prisons, 937 F.2d 26, 31 (2d Cir. 1991) (holding that the disciplinary hearing officer's determination that inmate had waived request for witnesses due to inmate's inability to identify other prisoners by name was arbitrary, especially because the identities of

11

those witnesses were easily ascertainable by prison authorities); Dixon v. Goord, 224 F. Supp. 2d 739, 747 (S.D.N.Y. 2002) (suggesting that prison authorities should make a "meaningful effort" to locate the witnesses identified by the accused inmate). There are occasions where live witnesses requested by the accused inmate need not be called, and testimony may be presented by other means such as through written statements; however, in those instances, prison officials may be required to explain why such witnesses were not allowed to testify. See Ponte v. Real, 471 U.S. 491, 497 (1985); see also Wolff, 418 U.S. at 565-66 (noting that when institutional safety would otherwise be compromised, reasonable limitations on a prisoner's procedural safeguards may be tolerated).

Here, Petitioner alleges that he requested a specific witness named "Inmate Thomas," housed in bunk T2F-42, to present testimony at his disciplinary hearing. (Pet'r Br. [Doc. #11] at 2, 8-9.) Specifically, Petitioner mentioned "inmate on bunk T2F-42" on his witness request, but on same the form referred to the inmate as "inmate Thomas T2F-42." (Ex. [Doc. #7-2] at 18.) The record reflects that Petitioner provided the following statement prior to the hearing:

> On the date of the incident at about 12:30 a.m. I reported to work in the kitchen. As I entered into the kitchen I proceeded to the sink by the stock room to obtain my hair net and beard guard as well as gloves. I then went over to the stove top grill located on the serving line closest to the closed F2A kitchen slider with Inmate Thomas T2F-42. Me and inmate named above begin preparing pancakes on the grill. As I stood talking to the inmate I began to fix my clothes (tuck shirt in, button pants etc.) and I looked out the F2A slider as I was putting my blue kitchen gloves on. A couple of minutes later while me and the above named inmate were working Officer Breland came over and asked me to step outside the kitchen through F2B because F2A remains closed. He notified me

of Officer Carter's accusation and told me to dress out and return to the unit. Inmate named above was standing with me inside the kitchen the entire time and was in a better position to see me than the officer.

(Id.) However, the inmate assigned to bunk T2F42 at the time statements were collected was named Ceddrick Miles, who noted that he had "just moved in the block," suggesting that prison officials had attempted to obtain a witness statement from the wrong inmate. (Id. at 19.) Petitioner set out his concern in his initial grievance dated December 9, 2014, as follows:

> My right to have written witness statements gathered in my behalf was violated because I wrote in my statement that the inmate who was assigned to bunk T2F-42 name was Thomas and they (the investigating officers) gathered a statement from an inmate named Ceddrick Miles who wrote on his statement that he had no knowledge of the incident because he just moved on the bunk. Inmate Thomas had moved but instead of looking for him the investigator simply used whoever was next on the bu[nk]. The incident happened in the kitchen, me and Thomas worked in the kitchen. I requested statements from two of the supervisors assigned to the kitchen and both staff knew the inmate who I was referring to in my statement full name and identity and investigator could have gotten the full name . . . from either of them when he obtained their statements. Since inmate Thomas who slept on T2F-42 at the time was a material witness who saw the whole incident this error greatly hurt my case . . . ."

(Id. at 3.) Notably, Petitioner has also attached to his Response sworn statements from Tykeem S. Thomas, the individual that Petitioner argues he wanted to call as a witness. In those statements, Mr. Thomas claims that he was present at the scene and can verify that Petitioner did not commit the disciplinary offense as alleged. (Pet.'r Resp. [Doc. #11] at 23, 24.) In his Affidavit, dated January 7, 2015, Mr. Thomas states:

> On or about November 14th at approximately 12:30 a.m. I was present in the kitchen. And had the opportunity to witness the entire incident. I explained to the Captain when she came to the kitchen that I was willing to write a statement as well as provide truthful testimony at D.H.O. Hearing. Myself and Joe Clark were the only two inmates in the area in question. He was helping me prepare

13

pancakes for the AM Breakfast. We were standing there holding a conversation. From the angle where I was standing you would have had to be present in the kitchen to see. Joe Clark was facing me conversing while moving his hands in an attempt to explain an incident that happened on his unit. After about 5 min. Officer Breland called Joe over to the office. Subsequently I learned he was being accused of something sexual. I expressed opposition to that assumption as I was standing there holding a conversation with him the whole time. I was told that they would come collect a statement and I would possibly be needed in the future for truthful testimony. As of today I still have not been seen, nor called for my statement or testimony. . . . .

In light of the above, the Court cannot find that there are no genuine issues of material fact with respect to whether Petitioner's due process rights were violated regarding his ability to call witnesses. In addition, the Court notes that it lacks sufficient evidence to determine whether the alleged due process errors, if they occurred, were harmless. In the instant case, the sworn statement of Mr. Thomas appears to contradict the account of the accusing prison guard which formed the basis of Petitioner's disciplinary conviction. Courts in similar cases have declined to find the exclusion of a corroborating witness's testimony to be harmless. See, e.g., Donelson v. Pfister, No. 1:13–cv–01523–JBM, 2017 WL 586472, at *7 (C.D. Ill. Feb. 13, 2017) ("[I]f the missing evidence supported [the petitioner's] story about the assault, then it would undermine the committee's decision. Therefore, the Court cannot find that the procedural due process errors were harmless." (citation omitted)); see also Whitlock v. Johnson, 153 F.3d 380, 387-88 (7th Cir. 1998) (discussing how, because of the credibility gap when an inmate contradicts a guard, a witness's testimony corroborating the inmate's version of events is "many times the most probative") (citing Graham v. Baughman, 772 F.2d 441, 445 (8th Cir. 1985));. Therefore, if Petitioner's witness was improperly excluded at the

14

disciplinary hearing, the Court cannot determine as a matter of law that such an error was harmless.

In light of the above, unresolved factual issues preclude this Court from recommending summary judgment to Respondent with respect to Petitioner's first and third claims for relief. Therefore, the Court will recommend that the Motion for Summary Judgment be denied at this time. Before setting this matter for an evidentiary hearing, the Court will allow Respondent and Petitioner the opportunity to set out any potential need for discovery, consistent with Rule 6 of the Rules Governing Section 2254 Proceedings.[3] In addition, the Court notes that rather than proceeding to discovery and an evidentiary hearing, it may be that Respondent will instead elect to reinstate the 30 days good time credits taken away from Petitioner as a result of this disciplinary conviction, or grant Petitioner a new disciplinary hearing in light of the issues set out above. If Respondent elects either of those options within fourteen (14) days of this Order and Recommendation, Respondent should provide notice of that election and this case will be dismissed as moot. If Respondent does not elect either of

---

[3] In its briefing, Respondent notes that "there is disagreement among the federal courts over the applicability of the deferential standard of review provisions of 28 U.S.C. § 2254(d) and (e), to the rulings of state prison administrative bodies." (Resp. Br. [Doc. #7] at 7.) On this issue, the Court also notes that the application of a deferential standard of review, and the consideration of additional evidence, may be affected by the availability and scope of the state court review. See 28 U.S.C. § 2254(d) and (e); Piggie v. McBride, 277 F.3d 922, 925 (7th Cir. 2002) (per curiam) (explaining White v. Ind. Parole Bd., 266 F.3d 759 (7th Cir. 2001) (holding that when a state "has chosen not to make judicial process available to review prison disciplinary board decisions . . . the state may not benefit from § 2254(d)'s limitation on the scope of collateral attack with respect to those decisions" and that the same approach applies to factual findings under § 2254(e)). As noted above, in Petitioner's state court proceedings, the State maintained that prison disciplinary procedures are a matter of internal prison administration and are not amenable to state judicial review. (Response to Petition for Writ of Certiorari [Doc. #7-8] at 4-5). Therefore, this issue will need to be further addressed by the parties and the Court if the case proceeds to discovery and an evidentiary hearing.

those options, Respondent must submit, by August 28, 2017, any proposed discovery and the reason for the proposed discovery request pursuant to Rule 6. Petitioner may thereafter submit any proposed discovery, with the reason for the proposed discovery request, by September 11, 2017. The Court will consider the submissions and enter an Order setting the scope of discovery prior to any evidentiary hearing.[4]

IV.    MOTION FOR EVIDENTIARY HEARING

Petitioner has also submitted two Motions for Evidentiary Hearing [Doc. #9, #12] relating to the instant Petition. However, as noted above, any evidentiary hearing will be set after an appropriate period for discovery, as needed. Therefore, Petitioner's Motions for Evidentiary Hearing are denied at this time.

V.    MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS/FOR COUNSEL

Finally, the Court notes that Petitioner has submitted a "Motion for Leave to Proceed In Forma Pauperis" [Doc #13] which, based on its contents, the Court will construe as a Motion for Appointment of Counsel. There is no constitutional right to appointed counsel in a habeas case. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) (holding that "the right to appointed counsel extends to the first appeal of right, and no further"); United States v. Williamson, 706 F.3d 405, 416 (4th Cir. 2013) ("[A] petitioner has no Sixth Amendment right to counsel in order to mount a collateral challenge to his conviction."); Hunt v. Nuth, 57 F.3d

---

[4] With respect to Petitioner's remaining contentions regarding the alleged violations of his due process rights, the Court need not address those contentions at this time in light of the conclusion set out above, and any remaining claims can be addressed after discovery and an evidentiary hearing as needed.

1327, 1340 (4th Cir. 1995) (noting that a petitioner "had no constitutional right to an attorney during his federal habeas proceeding"). Under 28 U.S.C. § 2254 and 18 U.S.C. § 3006A, the Court, in its discretion, may appoint counsel if it "determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2). Appointment of counsel is also required if discovery is otherwise authorized and counsel is needed for effective discovery or where an evidentiary hearing is to be held. See Rules 6(a) and 8(c) of the Rules Governing Section 2254 Proceedings in the United States District Courts. If this case proceeds to discovery, the Court will appoint counsel to assist Petitioner pursuant to Rule 6(a). However, if Respondent elects to restore Petitioner's good time credits or grant a new disciplinary hearing, this case would be moot and no discovery or appointment of counsel would be needed. Therefore, Petitioner's request for counsel will be denied, but if this case proceeds to discovery, or if the Court determines that the interests of justice otherwise require, the Court will appoint counsel at that time.

VI.   CONCLUSION

IT IS THEREFORE RECOMMENDED that Respondent's Motion for Summary Judgment [Doc. #6] be DENIED at this time, as set out above.

IT IS ORDERED that Respondent must submit, by August 28, 2017, any proposal for requested discovery in this case and the reasons for the proposed discovery requests, consistent with Rule 6 of the Rules Governing Section 2254 Proceedings, and by September 11, 2017, Petitioner must submit any proposed discovery, with the reasons for the proposed discovery requests. The Court will consider the submissions and enter an Order setting the scope of discovery prior to any evidentiary hearing. However, if within fourteen (14) days of

this Order and Recommendation, Respondent instead elects to restore the 30 days good time credits taken away from Petitioner as a result of this disciplinary conviction, or grant Petitioner a new disciplinary hearing in light of the issues set out above, Respondent should provide notice of that election and this case will be dismissed as moot, and no proposed discovery requests need be submitted.

IT IS FURTHER ORDERED that Petitioner's Motions for Evidentiary Hearing [Docs. #9, #12] are DENIED at this time without prejudice.

FINALLY, IT IS ORDERED that Petitioner's "Motion for Leave to Proceed In Forma Pauperis" [Doc #13] is construed as a request for court-appointed counsel and is DENIED at this time, but if this case proceeds to discovery, the Court will appoint counsel as set out above.

This, the 8th day of August, 2017.

                                                /s/ Joi Elizabeth Peake
                                                United States Magistrate Judge